# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF VIRGINIA

## Alexandria Division

| | |
|---|---|
| Douglas Lewis,<br>    Plaintiff, | )<br>)<br>) |
| v. | )    1:17cv582 (CMH/JFA) |
| David Zook,<br>    Defendant. | )<br>)<br>)<br>) |

## MEMORANDUM OPINION

This matter comes before the Court on a Motion for Summary Judgment filed by defendant Warden David Zook of Sussex I State Prison ("Sussex I"). Douglas Lewis, an inmate at that facility, filed this pro se civil rights action pursuant to 42 U.S.C. § 1983, alleging that: (1) he was subjected to unconstitutional conditions of confinement when he was not provided with a step stool to access the top bunk; and (2) his right to equal protection thereby was violated, because other inmates at the institution have step stools. For the reasons which follow, defendant Zook's Motion for Summary Judgment will be granted.

### I. Background

#### A. Plaintiff's Allegations

Plaintiff alleges in the amended complaint that he is housed in Building 4, Pod A, cell 29 at Sussex I. [Dkt. No. 5 at 5][1] On June 9, 2016 he fell while "trying to get down off the top bunk which is more than 4' high." Id. Plaintiff states that there was no step stool in the cell to allow him safe passage from the top bunk to the floor. Plaintiff claims that as a result of the fall he

---

[1]Plaintiff's initial complaint in the action was determined to be insufficient to state a claim for which relief could be granted, and in deference to his pro se status he was provided with an opportunity to submit a particularized and amended complaint. [Dkt. No. 3] The amended complaint was served on Warden Zook and is the operative complaint in the lawsuit.

suffered a concussion, a chipped tooth, lacerations to his head, and bruises to his hands and knees. Plaintiff asserts that this incident violated his Eighth Amendment right "to have reasonable living conditions." Id.

In a second claim, plaintiff states that he is denied equal protection in violation of the Fourteenth Amendment, because Sussex I allegedly provides inmates in other buildings with step stool and a table to allow them to get in and out of top bunks more easily. Plaintiff states that since he is housed in Building 4, Pod A he is denied a "proper way to get up and down from the bunk." The sole named defendant as to both claims is Warden Zook, and as relief plaintiff seeks injunctive relief in the form of an order directing that he be "provided with a special ladder to climb in the bunk," as well as an award of $5 million in damages. [Dkt. No. 5 at 6]

B. Proceedings

On February 2, 2018, Warden Zook filed a Motion for Summary Judgment accompanied by a memorandum and exhibits, asserting that plaintiff establishes no claim for violation of his constitutional rights. [Dkt. No. 20 -21] Plaintiff was provided with the notice required by Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) and Local Rule 7(J) [Dkt. No. 22], and he filed a Brief in Response to the Motion for Summary Judgment with exhibits on February 22, 2018. [Dkt. No. 23] For the reasons which follow, the Motion for Summary Judgment will be granted, and a Motion for Status of Case filed by the plaintiff's will be denied, as moot.

**II. Analysis**

A. Standard of Review

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that judgment on the pleadings is appropriate. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (moving party bears the burden of persuasion on all relevant issues). To meet that burden, the moving party must demonstrate that no genuine issues of material fact are present for resolution. Id. at 322. Once a moving party has met its burden to show that it is entitled to judgment as a matter of law, the burden then shifts to the non-moving party to point out the specific facts which create disputed factual issues. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Matsushita Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). In evaluating a motion for summary judgment, a district court should consider the evidence in the light most favorable to the non-moving party and draw all reasonable inferences from those facts in favor of that party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). Those facts for which the moving party bears the burden of proving are facts which are material. "[T]he substantive law will identify which facts are material. Only disputes over facts which might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. An issue of material fact is genuine when, "the evidence ... create[s] [a] fair doubt; wholly speculative assertions will not suffice." Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985). Thus, summary judgment is appropriate only where no material facts are genuinely disputed and the evidence as a whole could not lead a rational fact finder to rule for the non-moving party. Matsushita, 475 U.S. at 587.

B. Undisputed Material Facts

Warden Zook has supplied evidence which establishes the following facts. Lewis is an

3

inmate at Sussex I and was assigned to a top bunk during the times relevant to this lawsuit. Inmates at Sussex I are not issued step stools. Zook Aff. ¶ 5. If an inmate has difficulty accessing a top bunk due to medical reasons, he can request a bottom bunk assignment from the institution's medical authorities. Id. Warden Zook has no personal involvement in making bunk assignments at Sussex I, nor has he personally received any informal complaints or correspondence from Lewis regarding the incident at issue. Zook Aff. ¶¶ 5 - 6.

The cells at Sussex I are designed with bunk beds bolted to the walls. Zook Aff. ¶ 5. Inmates assigned to top bunks can access their beds by climbing on a chair which is attached to a nearby desk, which in turn is mounted on the wall. Id. Sussex I does not issue step stools to inmates because they could be thrown or disassembled to make weapons. Id.

On June 9, 2016, Lewis was observed walking into the dining hall with several scars and marks on his face. Zook Aff. ¶ 7. That same day he was escorted to the medical department and was being treated by a nurse for severe head trauma when he collapsed. Id. At that point he was transported by ambulance to a hospital. Id. An incident report was prepared regarding the occurrence and is attached as an exhibit to Zook's affidavit.

Although Lewis initially stated to prison officials that his injuries occurred when he fell in his cell, an investigation revealed he was attacked over a poker debt by a fellow inmate named D. Ford. Zook Aff. ¶ 7. During the investigation, Lewis stated that Ford entered his cell and attacked him. Id. He could not recall how many times Ford struck him, and at some point he hit his head on the bunk and had no memory of what happened after that. Id. Ford was charged with fighting. Id.

After receiving the appropriate <u>Roseboro</u> notice, plaintiff filed his Brief in Response to

Motion for Summary Judgment, which is signed under penalty of perjury. [Dkt. No. 23 at 33] Plaintiff accuses the defendant of providing "unfactual facts," and states that his injuries were caused when he was "trying to get on to his top bunk bed." Id. at 1, 4. He explains that he was "attempting to climb onto the bed to get his I.D. for chow" when his foot slipped. As he fell his left hand couldn't catch the edge of the bed, and his body turned to the left and hit the bed which caused his left ear to split. After his head hit the bed he fell face-first to the floor, which caused him to suffer a chipped tooth. He blacked out "for a few seconds." Id. at 9. Lewis states that defendant's claims of an attack or fight are untrue, and that when he was seen walking near the chow line he had just gotten up off the floor after suffering the fall. Id. at 7 - 8.

As to the equal protection claim, Lewis avers that defendant violated his rights "by not putting a means to get on the top bunk in his cell like there is in all other pods." Id. at 26. In support of this argument, plaintiff has submitted four statements from other inmates at Sussex I. In an unsworn exhibit attached to the initial complaint,[2] inmate Rhett Bean states that he was assigned to several other units in Sussex I before being housed in 4 Pod A, and that "there is no stepping stool to get up and down from the top bunk to the floor" in his current cell. [Dkt. No. 1, Ex. B]

Three additional unsworn statements are provided as exhibits to plaintiff's Brief in response to Motion for Summary Judgment.[3] Inmate Tremel V. Children states that Lewis moved into his cell on July 8, 2016 and was assigned to the top bunk. Lewis told Children that

---

[2]The statement was not signed under penalty of perjury; instead, the writer asserts only that to "the best of [his] belief and knowledge that what I have written is true and accurate."

[3]Although these statements are all captioned as affidavits and notarized, none is signed under penalty of perjury.

5

he previously had fallen while trying to get onto the top bunk in his cell, and Children allowed Lewis to use the bottom bunk from that day until August, 2017. Children states that "[t]here is no proper way to get on the top bunk in 4A pod like in other buildings." [Dkt. 23, Ex.1] Inmate Sherron Donte Worrell states that when he moved into the cell he was assigned to the bottom bunk, but Lewis was using the bottom bunk. Lewis explained to Worrell "that he had a problem getting onto the top bunk and told me all about his prior fall and injury from there being no proper way to get onto and off the top bunk," and Worrell agreed to let Lewis continue to use the bottom bunk. Worrell also states that "[t]here are no stools in 4A pod in no other cells like there are in every other building and pods even seg." [Dkt. 23, Ex.2] Lastly, inmate Ryan Davis states that he has been housed in five units at Sussex I that "have a means to get on the top bunk, because there is a stool that is attached to the wall to step on." [Dkt. 23, Ex.3]

C. Eighth Amendment Claim[4]

To establish a claim for cruel and unusual punishment due to conditions of confinement that violate the Eighth Amendment, a plaintiff must allege facts sufficient to show: (1) an objectively serious deprivation of a basic human need, that is, one causing serious physical or emotional injury, and (2) that prison officials were deliberately indifferent to that need. Farmer v. Brennan, 511 U.S. 825, 834 (1994); Wilson v. Seiter, 501 U.S. 294, 198 (1991). To meet the first prong, plaintiff must allege facts sufficient to show that the condition complained of was

---

[4] It is settled that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); see Woodford v. Ngo, 548 U.S. 81, 92 (2006) (requiring complete exhaustion of correctional facility administrative remedies). Defendant does not challenge either of plaintiff's claims on the basis of the exhaustion requirement.

6

"sufficiently serious." Farmer, 511 U.S. at 834. Only extreme deprivations will make out an Eighth Amendment claim, and it is plaintiff's burden to allege facts sufficient to show that the risk from the conditions of his confinement was so grave that it violated contemporary notions of decency and resulted in serious or significant physical or emotional injury. Hudson v. McMillian, 503 U.S. 1, 8 (1992); Strickler v. Waters, 989 F.2d 1375, 1379-81 (4th Cir. 1993). To meet the second prong, plaintiff must allege facts sufficient to show that defendants knew of facts from which an inference could be drawn that a "substantial risk of serious harm" was posed to his health and safety, that they drew that inference, and then disregarded the risk posed. Farmer, 511 U.S. at 837.

There are several reasons why Lewis cannot succeed on his Eighth Amendment claim. First, Warden Zook is not a proper defendant for Lewis' allegations. To state a cause of action under § 1983, a plaintiff must allege facts indicating he was deprived of rights guaranteed by the Constitution or laws of the United States and that this deprivation resulted from conduct committed by a person acting under color of state law. See West v. Atkins, 487 U.S. 42 (1988). Thus, a named defendant must have had personal knowledge of and involvement in the alleged violation of plaintiff's constitutional rights for the action to proceed against him. Here, it is uncontroverted that Warden Zook was not personally involved in assigning Lewis to a top bunk, nor did he personally receive any complaints or correspondence from Lewis regarding the incident at issue. Zook Aff. ¶¶ 5 - 6. Accordingly, Warden Zook can have no direct liability for the injuries Lewis allegedly suffered as the result of falling from the bunk.

Nor can Zook be liable to Lewis as the result of his supervisory position. Supervisory officials may be held liable only in limited circumstances for constitutional injuries inflicted by

7

their subordinates. Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994) (citing Slakan v. Porter, 737 F.2d 368 (4th Cir. 1984)). This liability is not premised on respondeat superior, but upon "a recognition that supervisory indifference or tacit authorization of subordinates misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." Id. at 798 (quoting Slakan, 737 F.2d at 372-73). "[L]iability ultimately is determined 'by pinpointing the persons in the decisionmaking chain whose deliberate indifference permitted the constitutional abuses to continue unchecked.'" Id. To establish supervisory liability under § 1983, a plaintiff must demonstrate:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

Id. at 799 (citations omitted). Here, Lewis offers no facts to demonstrate that Warden Zook had actual or constructive knowledge that subordinates were engaged in conduct that posed a "pervasive and unreasonable risk" of constitutional injury to Lewis. The warden accordingly can have no liability to Lewis premised on his supervisory position.

Under other circumstances, Lewis as a pro se litigant might be given an opportunity to amend his complaint, to name a legally appropriate defendant. Such an action would be futile in this case, however, because Lewis has failed to establish a substantively meritorious claim for violation of his Eighth Amendment rights. First, Lewis' fundamental contention that the injuries he suffered on June 9, 2016 were caused by a fall from his bunk has not been proven. After

8

Lewis made that claim in the amended complaint, defendant Zook came forward with an affidavit supported by an incident report which indicated that Lewis actually was injured when he was beaten by a fellow inmate. In rebuttal, Lewis filed his own statement in the form of a sworn brief, as well as statements by three fellow prisoners. These submissions are insufficient to create a genuine issue of material fact as to the manner in which Lewis' injuries occurred.

It is well established that the non-moving party may not defeat a properly-supported summary judgment motion by simply substituting the "conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990). Even where the non-moving party in such a situation is a pro se prisoner entitled to liberal construction of his pleadings, a "declaration under oath ... is not enough to defeat a motion for summary judgment. He has to provide a basis for his statement. To hold otherwise would render motions for summary judgment a nullity." Campbell-El v. Dist. of Columbia, 874 F.Supp. 403, 406 - 07 (D.C. 1994); see also, Local Civil Rule 7(K)(3) (to defeat a dispositive motion, a pro se party "must identify all facts stated by the moving party with which the pro se party disagrees and must set forth the pro se party's version of the facts by offering affidavits ... or by filing sworn statements...."). Here, plaintiff's response to the Motion for Summary in substance amounts to nothing more than a recapitulation of the complaint, and it thus is insufficient as a matter of law to defeat the defendant's Motion for Summary Judgment.[5]

---

[5] Moreover, it is noteworthy that plaintiff's descriptions of the manner in which he allegedly suffered his injuries differ markedly. In the amended complaint, Lewis alleges that he fell while "trying **to get down off** the top bunk ...". [Dkt. No. 5 at 5] In his Brief in Response to Motion for Summary Judgment, on the other hand, Lewis states that he fell while "trying **to get onto** his top bunk bed" and that he was "attempting **to climb onto** the bed to get his I.D. for chow." [Dkt. No. 23 at 1, 4]

9

Nor do the three statements submitted by other inmates in support of Lewis' response to the summary judgment motion create a genuine issue of material fact as to the manner in which Lewis was injured. As noted above, none of these statements was signed under penalty of perjury, and they thus are insufficient to defeat defendant's summary judgment request. Fed. R. Civ. P. 56(e); see United States v. White, 366 F.3d 291, 300 (4th Cir. 2004) (unsworn argument does not constitute evidence to be considered in opposition to summary judgment motion); Price v. Rochford, 947 F.2d 829, 832 (7th Cir. 1991) (verification based on personal knowledge or information and belief is insufficient to oppose a motion for summary judgment because it avoids the possibility of perjury). Moreover, even were that not so, in each instance the inmate does no more than recount what plaintiff told him about falling off the bunk. Such hearsay statements that lack an evidentiary basis will not defeat a motion for summary judgment. See Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 962 (4th Cir. 1996) (holding that summary judgment affidavits cannot be based on hearsay); LeBlanc v. Sunset Management, Inc., 2017 WL 2974020, at *4 (D. S.C. July 12, 2017) (inadmissible hearsay cannot be used as evidentiary support to defeat a summary judgment motion).

Lastly, even if Lewis had successfully established his version of the salient events, his Eighth Amendment claim still would fail. As to the first prong of the test for an Eighth Amendment violation - that is, whether the condition at issue poses an objectively serious deprivation of a basic human need - "courts that have considered whether top bunks without ladders or other assistive devices violate the Eighth Amendment have overwhelmingly ... held that they do not." Naki v. State of Hawaii, 2015 WL 4647915, at *6 (D. Az. Aug. 5, 2015); see also, e.g., Hucker v. California Dep't of Corr., 2010 WL 4904747, at *4 (E.D. Cal. Nov. 24,

2010) ("... [M]ultiple courts have held that the failure of prison officials to equip a plaintiff's bunk with a ladder does not amount to the deprivation of "a minimal civilized measure of life's necessities."); Connolly v. County of Suffolk, 533 F. Supp. 2d 236, 241 (D. Mass, 2008) ("[T]he failure of prison officials to equip his bunk bed with a ladder simply does not amount to a deprivation of 'a minimal civilized measure of life's necessities.'"); Wilson v. State, 2002 WL 31499736, at *1 (W.D. Va. May 6, 2002) (no Eighth Amendment violation when prison "failed to provide ladders, step and/or safety bars for inmates assigned to top bunks, even after Wilson informed them of his falls and resulting injuries.") Thus, even if Lewis' injuries did result from a fall from his bunk, the absence of a step stool to assist him in getting into and out of the bunk would not amount to a deprivation of constitutional dimension.

As to the second prong of the deliberate indifference standard, Lewis has presented no argument whatever, much less evidence, to suggest that Sussex I officials were aware of and deliberately indifferent to any substantial risk of serious harm posed by the lack of a step stool in his cell. Farmer, 511 U.S. at 837. Under these circumstances, even if Lewis' injuries did occur as the result of his attempt either to climb onto or get out of his bunk without a step stool, no violation of the Eighth Amendment has been demonstrated, and defendant is entitled to summary judgment on that claim.

D. Fourteenth Amendment

The Equal Protection Clause of the Fourteenth Amendment protects against arbitrary classifications by state actors. See U.S. Const. amend. XIV, § 1. To bring an equal protection claim, a prisoner must plead sufficient facts to make a threshold showing "that he has been treated differently from others with whom he is similarly situated and that the unequal treatment

11

was the result of intentional or purposeful discrimination." Veney v. Wyche, 293 F.3d 726, 730-31 (4th Cir. 2002) (quoting Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001)). Only after satisfying this threshold requirement will the Court determine whether the disparate treatment at issue was justified. Id. at 731. "Once this showing is made, the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny." Morrison, 239 F.3d at 654.

Here, Lewis alleges only in the most conclusory fashion that inmates in other pods at Sussex I are provided with step stools. He does not allege that these other inmates are similarly situated to himself, nor does he contend that their allegedly unequal treatment resulted from intentional or purposeful discrimination. Cf. Veney, 293 F.3d at 730-31. And even if his allegations were sufficient to state a claim for a denial of equal protection, he has come forward at this juncture with no evidentiary support whatever for his position. Accordingly, summary judgment will be granted to defendant on this claim.

E. Qualified Immunity

Lastly, to the extent that Lewis seeks an award of monetary damages, Warden Zook is entitled to qualified immunity. Government officials preforming discretionary functions generally are "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The "threshold question" in a qualified immunity analysis is whether, "[t]aken in the light most favorable to the party asserting the injury, ... the facts show" that the alleged conduct violated a constitutional right. Saucier v. Katz, 533 U.S. 194, 201 (2001). "If no constitutional right would have been violated were the

allegations established, there is no necessity for further inquiries concerning qualified immunity." Id., see also, Figg v. Schroeder, 312 F.3d 625, 635 (4th Cir. 2002). If the facts alleged do show a constitutional violation, "the next step is to ask whether the constitutional right was clearly established in the specific context of the case." Figg, 312 F.3d at 365. "[T]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Saucier, 533 U.S. at 202, quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987).

Here, as case law cited above clearly demonstrates, Lewis had no constitutional right to have his cell equipped with a step stool or other assistive device to reach his bunk. Connolly, 533 F. Supp. at 241. That being so, Warden Zook is entitled to qualified immunity from Lewis' claim for damages.

### III. Conclusion

For the foregoing reasons, defendant's Motion for Summary Judgment will be granted, and judgment will be entered in his favor. Plaintiff's Motion for Status of Case will be denied, as moot. An appropriate Order and judgment shall issue.

Entered this 4th day of June 2018.

_____
United States District Judge

Alexandria, Virginia